**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT SOLTIS,<br><br>Plaintiff,<br><br>v.<br><br>CATALENT PHARMA SOLUTIONS, *et al.*,<br><br>Defendants. | Civil Action No. 23-567 (ZNQ) (TJB)<br><br>**MEMORANDUM OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon the Motion to Dismiss (the "Motion", ECF No. 14) filed by Defendants Catalent Pharma Solutions, LLC ("Catalent")[1] and Kay Schmidt ("Schmidt"). In support of their Motion, Catalent and Schmidt (collectively, "Defendants") filed a brief ("Moving Br.", ECF No. 15). Plaintiff Scott Soltis ("Soltis") filed an opposition ("Opp'n Br.", ECF No. 18), to which Defendants replied ("Reply", ECF No. 21). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78[2] and Local Civil Rule 78.1. For the reasons outlined below, the Court will GRANT Defendants' Motion to Dismiss.

---

[1] The Complaint identifies Defendant Catalent as "Catalent Pharma Solutions."
[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. Procedural Background[3]

Soltis filed a Complaint in the New Jersey Superior Court stemming from his employment with Catalent. The Complaint asserts claims for promissory estoppel (Count I), and breach of the covenant of good faith and fair dealing (Count IV).[4] (Compl. ¶¶ 26–47, ECF No. 1, Ex. A.) On February 1, 2023, Defendants removed the case to this Court on diversity jurisdiction grounds. (ECF No. 1.)

### B. Factual Background

Soltis started working as Director of Global Security at Catalent in 2017. (*Id.* ¶ 6.) His work was based out of Catalent's Somerset, New Jersey location, but there were no specific times that he had to physically be in the office. (*Id.* ¶ 7.) By early 2020, Soltis started working 100% remotely because of COVID-19. (*Id.* ¶ 8.). In October 2021, Soltis told Schmidt, his direct supervisor, that "it was his desire to relocate outside of New Jersey for health and personal reasons," to which Schmidt replied that she "did not see a problem with that since he was already working 100% remotely." (*Id.* ¶ 9.) Soltis again told Schmidt in March 2022 that he desired to move, and Schmidt again told him that she "did not see a problem with his relocation, as long as he could get to the various Catalent sites." (*Id.* ¶ 10.)

Based on Schmidt's communications, Soltis sold his house in May 2022 and advised Catalent that he would be moving. (*Id.* ¶¶ 11, 13.) Soltis submitted an official "Flex Work" request in June 2022 to work remotely. (*Id.* ¶ 12.) Prior to receiving a response to his request, he closed on the sale of his house in July, and relocated to South Carolina in August. (*Id.* ¶ 13.) Soltis's

---

[3] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[4] The Complaint also asserted claims for negligent/intentional misrepresentation and breach of contract, but Soltis withdrew those claims in his opposition papers on this Motion. (Opp'n Br. at 2 n.1.)

2

new residence was located two hours away from some of the smaller Catalent sites, but not near any of Catalent's large facility locations. (*Id.* ¶¶ 14, 16.)

After the move, Schmidt advised Soltis for the first time that Catalent had a policy requiring employees to be located within 50 miles of a large Catalent facility location.[5] (*Id.* ¶ 14). A short time later, Schmidt told Soltis that he had to work at one of the larger Catalent facility locations—Somerset, NJ, Baltimore, MD, St. Petersburg, FL, Winchester, IN, or Bloomington, KY—at least three days per week. (*Id.* ¶ 16.) Soltis was then told, by a Catalent representative not named in the Complaint, that he "must work out of the New Jersey location." (*Id.*) Surprised and upset, Soltis reluctantly responded in late August 2022 that he would do the three-day per week commute to New Jersey. (*Id.* ¶ 17.) He first suggested a start date of October 17, 2022 for the new arrangement, but was told that the in-person reporting had to start sooner. (*Id.* ¶¶ 17–18.) He then suggested a start date of September 28, 2022, which Catalent accepted. (*Id.* ¶ 19.) On September 20, 2022, prior to commencement of the new arrangement, Soltis was advised that he was being terminated because he did not read a resignation notice that was sent to him via email on September 12, 2022 until two days later. (*Id.* ¶¶ 16–17.)

On January 31, 2023, Soltis filed the current Complaint in New Jersey Superior Court.

## II.    JURISDICTION

The Court has diversity jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

---

[5] Soltis separately alleges that he subsequently learned there was in fact no such formal policy. (Compl. ¶ 14.) It was rather a "practice" of the company. (*Id.*) Moreover, "other . . . Catalent employees live more than 50 miles from a Catalent location and others still work 100% remotely and travel to sites as needed, including Schmidt herself." (*Id.* ¶ 15.)

3

### III. LEGAL STANDARDS

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.     Rule 12(b)(2)**

Rule 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant. Rule 4(e) authorizes federal courts to exercise "personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (internal quotation marks omitted). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981)). Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor*

5

*v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

If the court lacks general jurisdiction, it must conduct a tripartite inquiry to determine whether it may exercise specific jurisdiction over the non-resident defendant. *See O'Connor*, 496 F.3d at 317. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Physical entrance is not required," however, "what is necessary is a deliberate targeting of the forum." *Id.* (citations omitted). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The court should consider several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477.

## IV.   DISCUSSION

### A.   Rule 12(b)(6) Analyses[6]

#### 1.   Promissory Estoppel (Count I)

Count I of the Complaint asserts an estoppel claim with respect to Schmidt's communications with Soltis prior to his move and the three days per week arrangement that was

---

[6] Defendants assert several "undisputed facts" outside the Complaint, including Soltis's status as an at-will employee, that they claim refute the plausibility of the Complaint. (Moving Br. at 1–2.) Given that this is a Motion to Dismiss, the Court is limited to an assessment of the Complaint. Accordingly, the Court sets aside Defendants' lengthy arguments that rely on their position that Plaintiff is an at-will employee.

6

reached subsequent to his move. (*Id.* ¶¶ 26–31.) Defendants argue that the claim fails to state a plausible claim.

Generally, a plaintiff must plead the following elements to state a claim for promissory estoppel: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it[;] (3) reasonable reliance; and (4) definite and substantial detriment." *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty of* Burlington, 194 N.J. 223, 253 (N.J. 2008)). With respect to the promise that Soltis could work at the New Jersey location three days per week starting in September 2022, Defendants argue that Soltis fails to allege how he relied at all on that promise, let alone reasonably. (Moving Br. at 11–12.) Soltis argues that his reliance on the promise to work three days per week in New Jersey was reasonable because "there were no contingencies to the agreement." (Opp'n Br. at 8.) The Court does not find reasonable reliance in this instance. By the time Soltis had committed to working in person three days per week, he had already relocated to South Carolina. The Complaint does not identify any actions that Soltis took in reliance on that promise. (*See generally* Compl. ¶¶ 6–31.)

With respect to Schmidt's first set of communications with Soltis that occurred prior to his move, Defendants argue that Soltis "knew a formal approval process existed for remote work, and thus any actions he took *before* receiving official approval were *per se* unreasonable." (Moving Br. at 11 (emphasis in original).) Soltis argues that his reliance on Schmidt's representations was reasonable because Catalent did not respond to his "Flex Work" request until two months later; in other words, at the time he moved he had "heard nothing to the contrary." (Opp'n Br. at 8.)

As pled, the timeline of events precludes Soltis's reasonable reliance. Soltis sold his house in May 2022, applied for remote work approval through Catalent's formal "Flex Work" process in June 2022, and then closed on the sale of his house in July 2022 and relocated without waiting for

7

Catalent to approve his application. (Compl. ¶¶ 11–12.) In short, the Complaint does not articulate his basis for relying on his communications with Schmidt despite having pursued a formal Flex Work application.[7] Count I will be dismissed without prejudice.

### 2. Breach of the Covenant of Good Faith and Fair Dealing (Count IV)

Count IV of the Complaint alleges a claim for breach of the covenant of good faith and fair dealing. (Compl. ¶¶ 44–47.) Defendants argue that Count IV should be dismissed because there was no valid contract between the parties and therefore no duty of good faith ever existed. (Moving Br. at 24.). Defendants further argue that even if there were a valid contract, Soltis failed to plead that Defendants acted in bad faith or caused Soltis to suffer from damages. (*Id.* at 25.) On the other hand, Soltis argues that the Complaint shows that "Defendants were lacking in good faith and fair dealing" by terminating his employment "when they very well knew of the representations and promises made to him, upon which he would rely." (Opp'n Br. at 13.)

"There is no universally-accepted test for establishing a breach of the duty of good faith and fair dealing, but two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract."[8] *Yapak, LLC v. Mass. Bay Ins. Co.*, Civ. No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005)). Here, Defendants' termination of Soltis's employment certainly denied him the benefit

---

[7] To the extent the Complaint might be construed to allege that two months was too long to wait for Catalent to decide his Flex Work application, it fails to set forth an adequate factual basis for this allegation.

[8] Defendants recite elements for a claim for breach of the covenant of good faith and fair dealing that trace back to a 2001 New Jersey Appellate Division case, *Wade v. Kessler Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001), which does not apply those elements as New Jersey law. (Moving Br. at 24.) Rather, the elements are from California model jury instructions that the *Wade* court simply surveyed among various other iterations of the good faith standard. The *Wade* court did not adopt the California model, therefore this Court will not apply it. As set forth above the New Jersey Supreme Court has since articulated a good faith standard in its decisions, and its Model Civil Jury Charge Committee has published its own model jury instructions containing elements which are different from those of California. *See* Charge 4.10J of the New Jersey Courts Model Civil Jury Charges System.

8

of any of the "oral agreement[s]" he alleges to have bargained for with Schmidt and/or Catalent regarding his ability to work for the company. (Compl. ¶¶ 21, 45); *Yapak*, 2009 WL 3366464, at *2. However, the Court does not find the facts as alleged in the Complaint sufficient to show that Defendants "acted with bad motives/intentions and/or engaged in deception or evasion," as Soltis claims in Count IV. (Compl. ¶ 46.) Soltis does not allege that Defendants had any malicious motivation when his employment was terminated, or when Schmidt told Soltis he had to be within 50 miles of a Catalent location. *See Yapak*, 2009 WL 3366464, at *2. At best, the Complaint suggests that the real reason for Soltis's termination was withheld, and that the reason given to him was pretextual. (*See* Compl. ¶ 21.) The Complaint also alleges that Schmidt mentioned the 50-mile policy to Soltis for the first time after he had already moved. (Compl. ¶ 14.) The Complaint fails to plead facts to support the notion that Schmidt intentionally, either in bad faith or with a malicious motive, withheld such information from Soltis when she spoke to him on two previous occasions five and eight months prior. Insofar as this is an essential element of Soltis's claim, the Court finds that Count IV does not state a plausible claim for relief. Count IV will be dismissed without prejudice.

### B. Rule 12(b)(2) Analysis

Defendants separately seek the dismissal of Schmidt on the basis that she is not subject to either general or specific jurisdiction in New Jersey. Soltis insists that this Court does have personal jurisdiction over Schmidt despite her out of state residence. Although the Court need not address the question of personal jurisdiction over Schmidt because it has already concluded that it must dismiss the Complaint, the Court will nonetheless consider the issue in the interests of economy.

"A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (quoting

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Given that Schmidt is domiciled in Wisconsin, (Moving Br. at 27; Schmidt Cert. ¶¶ 3–4), this Court does not have general jurisdiction over her. *Crosson v. TMF Health Quality Inst.*, Civ. No. 20-18800, 2023 WL 2609048, at *5 (D.N.J. Mar. 23, 2023) (applying *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924). The only potential basis for an exercise of personal jurisdiction over Schmidt in her individual capacity[9] is therefore specific jurisdiction.

Defendants argue that Schmidt was not physically located in New Jersey during any of the phone communications at issue, and in fact travels to New Jersey "infrequently, approximately two to three times a quarter," solely for business purposes. (Schmidt Cert. ¶¶ 9–13; Moving Br. at 4.) Defendants further argue that because all of Schmidt's contacts with New Jersey occurred in her "corporate capacity," there is no specific jurisdiction over her because none of her actions support individual liability. (Moving Br. at 27.)

Soltis argues that Schmidt's physical presence in New Jersey is not required for this Court to exercise personal jurisdiction over her. (Opp'n Br. at 17.) Soltis further argues that Schmidt's role based out of Catalent's New Jersey location requires her to exchange emails and phone calls, as well as participate in team meetings, and that she "routinely visits the New Jersey facilities, at least 2-3 times per quarter." (*Id.*)

"In order to determine whether [a] corporate officer will be subject to personal jurisdiction, the following factors should be examined: the officer's role in the corporate structure, the quality

---

[9] Defendants do not dispute this Court's exercise of personal jurisdiction over Schmidt in her capacity as an agent of Catalent.

of the officer's contacts, and the extent and nature of the officer's participation in the alleged tortious conduct." *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 554 (D.N.J. 2018) (internal quotation marks omitted). In *Ragner Tech.*, the Court held that it could not exercise personal jurisdiction over one of the non-resident defendants, even if her actions were "specifically targeted toward New Jersey residents," because the only contact she was alleged to have made with New Jersey was "disseminated through [the company]." *Id.* at 555; *see also Ross v. Los Angeles Produce Distributors, LLC*, Civ. No. 20-6098, 2021 WL 3088253, at *3–4 (D.N.J. July 22, 2021) (refusing to exercise personal jurisdiction over a defendant whose "only deliberate action with New Jersey was in fulfilling her employment obligations") (citing *Ragner Tech.*, 287 F. Supp. 3d at 552).

Applying the *Ragner Tech.* factors here, Schmidt's role with Catalent is Senior Vice President, Enterprise Functions, and she served as Soltis's direct supervisor at Catalent. (Compl. ¶ 3; Schmidt Cert. ¶ 2.) The Complaint alleges that Schmidt twice told Soltis via telephone that she "did not see a problem" with his intention to move outside of New Jersey. (Compl. ¶¶ 9–10.) The Complaint further alleges that Schmidt told Soltis after he moved that he had to be "within 50 miles of a Catalent location," and that she was one of two Catalent employees who later informed him of his termination. (*Id.* ¶ 14.) It does not allege that Schmidt was the person who advised him after he moved that he "must work out of the New Jersey location" and then made an arrangement for him to do so three days per week. (*See id.* ¶¶ 16–19.) It is clear from the extent and nature of Schmidt's participation in the alleged conduct that her only contacts with New Jersey were done in her corporate capacity as a Catalent supervisor. (*See generally* Compl.) In short, Schmidt's actions as alleged in the Complaint do not "tend to establish [her] individual liability." *Ragner Tech.*, 287 F. Supp. 3d at 553. This Court therefore finds that it lacks personal jurisdiction over Schmidt in her individual capacity.

11

## V.  CONCLUSION

For the reasons outlined above, Defendants' Motion to Dismiss will be GRANTED. The Complaint will be dismissed without prejudice.[10] Plaintiff will be given leave to file an amended complaint, limited to those amendments that address the deficiencies identified herein, within 30 days. An appropriate Order will follow.

Date: October 23, 2023

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

---

[10] Given the Court has concluded that the Complaint must be dismissed, it does not reach Defendants' alternative request for a More Definite Statement under Rule 12(e). (Moving Br. at 13 n.4.)