Gerald J. Resnick, Esq., ID#015511978
**RESNICK LAW GROUP**
A Professional Corporation
5 Becker Farm Road, Suite 410
Roseland, New Jersey 07068
(973) 781-1204
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCOTT SOLTIS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CATALENT PHARMA SOLUTIONS;<br>KAYE SCHMIDT, Individually and as agent<br>of Catalent Pharma Solutions; XYZ CORP.<br>(1-5); and JANE AND JOHN DOES (1-5),<br><br>　　　　　Defendants. | CIVIL ACTION NO.: 23-567 (ZNQ) (TJB)<br><br><br>**AMENDED COMPLAINT, JURY<br>DEMAND AND DESIGNATION OF<br>TRIAL COUNSEL** |

　　　Plaintiff, Scott Soltis, residing at 3091 Viceroy Loop, Little River, South Carolina 29566 by way of Complaint against the Defendants, alleges and says as follows:

### NATURE OF THE ACTION

　　　1. This is an action seeking equitable and legal relief for Plaintiff relating to claims involving promissory estoppel, negligent/intentional misrepresentation, breach of oral contract and breach of covenant of good faith and fair dealing.

### JURISDICTION AND VENUE

　　　2. This matter was removed from the New Jersey Superior Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different States.

3. Venue is appropriate in this court due to the nature of the claims asserted and the fact that Defendant's headquarters are located in Somerset, New Jersey.

## THE PARTIES

4. At all times relevant hereto, Plaintiff, Scott Soltis ("Soltis") was an employee of Catalent Pharma Solutions ("Catalent") and held the position of Director of Global Security. He was terminated from employment on September 20, 2022.

5. Catalent is a provider of advanced technologies, and development, manufacturing and packaging services for pharmaceutical, biotechnology and consumer healthcare companies in nearly 100 countries. The company is headquartered at 14 Schoolhouse Road, Somerset, NJ 08873.

6. Kaye Schmidt ("Schmidt") is the Senior Vice President, Enterprise Functions, Chief of Staff for Catalent. She was Plaintiff Soltis' direct supervisor and was involved in promises/representations made to Soltis and the decision to terminate his employment.

7. At all times relevant hereto, Defendants XYZ corporations are (1-5), are subsidiaries, principals, or other associated corporations or companies of Catalent which are equally liable to Plaintiff for the unlawful acts of the company and the other parties set forth herein.

8. John and Jane Does (1-5) are currently unknown individuals who may have joined in the unlawful acts against Plaintiff as set forth herein.

## ALLEGATIONS

9. Plaintiff Soltis became employed at Catalent in or about November of 2017. He held the position of Director of Global Security.

10. When he first started with the company, Soltis was based in New Jersey in Catalent's Somerset location. However, he was never required to have a specific time during which he had to be in the office.

11. After the COVID-19 pandemic hit in early 2020, Soltis worked 100% remotely from home, as did many others in the company.

12. In October of 2021 Soltis advised Schmidt that he needed to relocate outside of New Jersey for health and personal reasons. Fully aware that Plaintiff would rely upon her response, Schmidt advised Plaintiff that she did not see a problem with him doing so, since he was already working 100% remotely. She did not advise Soltis that he needed any other permission to do so prior to his relocation.

13. In March of 2022 Plaintiff again spoke to Schmidt about his relocation, and once again she stated she did not see any issue with Soltis moving. As Soltis' direct supervisor, Schmidt was aware that Plaintiff would be relying on her approval to continue to work remotely form outside New Jersey. Thereafter Plaintiff began the process of selling his home and relocating.

14. The only condition Schmidt placed upon Plaintiff's relocation was that he would be able to visit Catalent sites, which he agreed to.

15. At no time during the above discussions did Schmidt ever inform Plaintiff that there was any formal policy (which there was not) that an employee had to live within 50 miles of one of Catalent sites. In fact, there were a number of employees that lived beyond 50 miles of a site at that time.

16. At no time during the above discussions did Schmidt ever inform Plaintiff that prior to relocating he needed to obtain written approval from the company to work remotely. In fact,

Schmidt led Plaintiff to believe that there was no additional approval Soltis needed to relocate and work remotely since he had been doing so for so long.

17. In a follow-up to the aforesaid discussions, Soltis advised Schmidt and others in the company that he would be moving.

18. In June of 2022, after Soltis contracted to sell his New Jersey home, relying upon the statements of his supervisor, Schmidt suddenly advised Plaintiff that he should submit an official request for "flex work" in order to allow him to work remotely. Believing that the "flex work" request was a mere formality, since he had never been asked to do so in the past, Plaintiff filed the papers, though at no time was he told to delay his relocation.

19. In August, 2022 Plaintiff moved into his new residence in South Carolina.

20. After relocating Schmidt advised Soltis of a "policy" that employees were expected to live within 50 miles of a Catalent site. This was the first time Schmidt had ever advised Plaintiff of this "policy" which he later discovered was not a policy at all, but a practice few people knew about and not followed by a number of employees, who instead travel to sites as needed.

21. After his move, Schmidt also advised Soltis he would now have to report to New Jersey three (3) days a week. At no time during the many discussions Plaintiff had with Schmidt or prior to his relocation was there any mention of this additional requirement.

22. Even so, and in effort to maintain his employment, Plaintiff agreed to travel back to New Jersey three (3) days a week.

23. Soltis then planned to start working from the New Jersey site from September 28-30, 2022.

24. However, on the evening of September 12, 2022 one of Soltis' direct reports gave notice by e-mail that he would be leaving the company. Because he was in Atlanta at a conference for Catalent, which included various meetings and a business dinner over a two (2) day period, Soltis did not see the e-mail until the morning of September 14, 2022.

25. On September 20, 2022, prior to even starting his in person reporting at the New Jersey location, Soltis was advised by Schmidt and Lynne Hay of Human Resources that he was being fired because he failed to see the e-mail resignation from his direct report until September 14, 2022.

26. At all times pertinent hereto, Schmidt revealed to Plaintiff, that she did not believe Soltis' commuting to New Jersey three (3) days a week was going to work out and Plaintiff was fired.

## COUNT I

## PROMISSORY ESTOPPEL

27. Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

28. At all times pertinent hereto, Plaintiff reasonably relied upon the statements by Schmidt, as a management official with Catalent, that he could continue to work remotely and relocating would not be an issue.

29. At no time prior to Plaintiff's reliance upon Schmidt's statements did she inform Plaintiff that 1) he needed to obtain formal approval for "flex work"; 2) that he needed to live within 50 miles of a Catalent location; or 3) that he would be required to work three (3) days a week from the New Jersey location.

30. At all times pertinent hereto, Plaintiff reasonably relied upon the promises by Schmidt to allow him to continue to work remotely from outside New Jersey, without any of the aforesaid conditions, which then led to the termination of his employment.

31. As a direct and proximate result of Defendants' promises, Plaintiff has suffered out-of-pocket expenses, loss of income, loss of benefits, and other severe financial losses.

## COUNT II

## NEGLIGENT/INTENTIONAL MISREPRESENTATION

32. Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

33. Defendants Schmidt and Catalent made the aforesaid misrepresentations negligently or purposely, knowing that Plaintiff would rely upon such statements. As a result Plaintiff was terminated.

34. At the time the misrepresentations were made to Plaintiff, Schmidt, individually and as agent for Catalent, knew them to be false or she was negligent in making them.

35. The misrepresentations of Defendants were intentional and/or negligent and they were material and were intended to induce Plaintiff to rely on them.

36. Defendants are liable to Plaintiff for such intentional and/or negligent misrepresentations upon which he reasonably relied.

37. As a direct and proximate result of Defendants' misrepresentations, Plaintiff has suffered out-of-pocket expenses, loss of income, loss of benefits, and other severe financial losses.

## COUNT III

## BREACH OF ORAL CONTRACT

38. Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

39. At all times pertinent hereto, the aforesaid representations by Schmidt upon which Plaintiff relied created an implied or oral contract between the parties.

40. Plaintiff had every intention of performing his obligations under the agreement.

41. Defendants materially breached the terms of the agreement.

42. As a direct and proximate result of said breach, Plaintiff has suffered loss of income, loss of benefits, and other severe financial losses.

## COUNT IV

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

43. Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

44. Defendants' conduct constituted a breach by Defendants of the covenant of good faith and fair dealing implied in the aforesaid implied and/or oral contract.

45. At all times pertinent hereto, Defendants acted in bad faith and engaged in deception or evasion in representing to Plaintiff that he would be permitted to work remotely from his new residence in South Carolina, and then placing three (3) conditions on Plaintiff's employment: 1) that he needed to obtain formal approval for "flex work"; 2) that he needed to live within 50 miles of a Catalent location; or 3) that he would be required to work three (3) days a week from the New Jersey location.

46. As a direct and proximate result of said breach, Plaintiff has suffered loss of income, loss of benefits, and other severe financial losses.

**WHEREFORE,** Plaintiff seeks Judgment against the Defendants as follows:

    a.    Compensatory damages, including past and future lost wages and employment benefits;

    b.    Damages for emotional and physical injury and distress;

    c.    Pre-and post-judgment interest;

    d.    Such other and further relief as this Court deems equitable and just under the circumstances.

### JURY DEMAND

Plaintiff hereby demands a trial by jury as to all causes so triable.

**RESNICK LAW GROUP, P.C.**
5 Becker Farm Road, Suite 410
Roseland, NJ   07068
(973) 781-1204
Attorney(s) for Plaintiff

Dated: November 21, 2023    By:    */s/ Gerald J. Resnick*
    GERALD J. RESNICK (5741)

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Gerald J. Resnick, Esq. as trial counsel.

**RESNICK LAW GROUP, P.C.**
5 Becker Farm Road, Suite 410
Roseland, NJ   07068
(973) 781-1204
Attorney(s) for Plaintiff

Dated: November 21, 2023            By:            */s/ Gerald J. Resnick*
                                                            _____
                                                            GERALD J. RESNICK   (5741)