**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT SOLTIS,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CATALENT PHARMA SOLUTIONS, *et al.*,<br><br>　　　　　　　　Defendants. | Civil Action No. 23-567 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon the Motion to Dismiss the Amended Complaint (the "Motion", ECF No. 35) filed by Defendants Catalent Pharma Solutions, LLC ("Catalent")[1] and Kay Schmidt ("Schmidt") (collectively, "Defendants"). In support of their Motion, Defendants filed a brief ("Moving Br.", ECF No. 35-1). Plaintiff Scott Soltis ("Soltis") filed a brief in opposition ("Opp'n Br.", ECF No. 36), to which Defendants replied ("Reply Br.", ECF No. 37). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons outlined below, the Court will **GRANT** Defendants' Motion to Dismiss.

---

[1] The Amended Complaint identifies Defendant Catalent as "Catalent Pharma Solutions."
[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

## I. BACKGROUND

### A. Procedural Background[3]

Soltis filed a Complaint in the New Jersey Superior Court stemming from his employment with Catalent. On February 1, 2023, Defendants removed the case to this Court on diversity jurisdiction grounds. (ECF No. 1.) Defendants thereafter filed a Motion to Dismiss (ECF No. 14), which the Court granted. ("Opinion," ECF No. 25.) Plaintiff subsequently filed an Amended Complaint ("Am. Compl.," ECF No. 27.) The Amended Complaint asserts claims for promissory estoppel (Count I) and breach of the covenant of good faith and fair dealing (Count IV).[4]

### B. Factual Background

Starting in 2017, Soltis worked for Catalent as Director of Global Security. (*Id.* ¶ 9.) His work was based out of Catalent's Somerset, New Jersey location, but there were no specific times that he had to physically be in the office. (*Id.* ¶ 10.) Soltis started working 100% remotely because of COVID-19 in early 2020. (*Id.* ¶ 11.) In October 2021, Soltis told Schmidt, his direct supervisor, that he "needed to relocate outside of New Jersey for health and personal reasons." (*Id.* ¶¶ 6, 12.) Schmidt replied that she saw no issue with him doing so, as he was already working remotely, and did not mention that any other permission was needed in order to relocate. (*Id.* ¶ 12.) Soltis again told Schmidt in March 2022 about his intent to relocate, and Schmidt again told him that she "did not see any issue with [him] moving." (*Id.* ¶ 13.) Thereafter, Soltis began the process of selling his home. (*Id.*)

During the October 2021 and March 2022 discussions Schmidt had not informed Soltis that he needed to obtain written approval to work remotely.[5] (*Id.* ¶ 16.) Following up on their

---

[3] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[4] Although the Amended Complaint initially asserted claims for negligent/intentional misrepresentation and breach of oral contract, Soltis withdrew those claims in his Opposition Brief. (Opp'n Br. at 1.)

[5] Plaintiff agreed to still visit Catalent sites upon relocation, which he understood as the only condition Schmidt had placed on his move. (Am. Compl. ¶ 14.)

2

discussions, Soltis informed Schmidt and others in the company that he would be relocating. (*Id.* ¶ 17.) Schmidt advised Soltis in June 2022 to formally request "Flex Work" in order to work remotely. (*Id.* ¶ 18.) Consequently, Soltis then submitted an official Flex Work request. (*Id.*) He was not told to delay his relocation, and he thought submitting the request was a mere formality because he had never been asked to do so in the past. (*Id.*) In August 2022, Soltis relocated to South Carolina.[6] (*Id.* ¶ 19.)

After the move, Schmidt advised Soltis for the first time that Catalent had a policy requiring employees to be located within 50 miles of a Catalent site.[7] (*Id.* ¶ 20.) Schmidt also told Soltis for the first time that he had to report to the New Jersey office three days per week. (*Id.* ¶ 21.) To maintain his employment, Soltis agreed that he would make the appropriate travel arrangements. (*Id.* ¶ 22.) He planned to start his three-day per week arrangement on September 28, 2022. (*Id.* ¶ 23.) On September 20, 2022, before commencement of the new arrangement, Soltis was advised that his employment was being terminated because he did not timely read a resignation notice from his direct report that was sent to him via email on September 12, 2022, until two days later. (*Id.* ¶¶ 24–25.) Schmidt revealed to Soltis that she did not believe his three-day per week commute was going to work out. (*Id.* ¶ 26.)

On January 31, 2023, Soltis commenced this lawsuit in the New Jersey Superior Court. On February 1, 2024, Catalent removed the matter to this Court. (ECF No. 1.)

---

[6] Soltis's original complaint stated that he sold his New Jersey home in May 2022 and closed on the sale of his New Jersey home in July 2022. (ECF No. 1 ¶¶ 11, 13.) Defendants point out that Soltis omitted these facts from his Amended Complaint. (Moving Br. at 3 nn.3–4.) At the motion to dismiss stage, the Court stays within the four corners of the operative complaint (here, the Amended Complaint). *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172–73 (3d Cir. 2013) (further explaining that an amended complaint replaces the original, and any facts not restated or included in the amended complaint do not bind the pleader).

[7] Soltis alleges that he subsequently learned there was in fact no such formal policy. (Am. Compl. ¶ 20.) It was rather a "practice" of the company. (*Id.*) Moreover, "a number of employees . . . lived beyond 50 miles of a site at that time." (*Id.* ¶ 15.)

3

## II. JURISDICTION

The Court has diversity jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing

4

that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   DISCUSSION

### A.   Rule 12(b)(2)

As an initial matter, the Court notes that Soltis has voluntarily dismissed his claims against Defendant Kay Schmidt. (Opp'n Br. at 1.) Therefore, the Court will grant Defendant's Motion to Dismiss Soltis's claims with respect to Defendant Schmidt, for lack of personal jurisdiction pursuant to Rule 12(b)(2). The Court will next consider the sufficiency of Soltis's allegations against Defendant Catalent.

### B.   Rule 12(b)(6) Analyses

#### 1.   Promissory Estoppel (Count I)

Count I of the Amended Complaint asserts a claim for promissory estoppel. (Am. Compl. ¶¶ 27–31.) Defendants argue that Soltis failed to cure the deficiencies identified by this Court in its prior opinion dismissing Soltis's claims—specifically, that Soltis still fails to plausibly plead the elements of promissory estoppel, most notably reasonable reliance. (Moving Br. at 7–15.) Soltis insists that his reliance on Schmidt's pre-move communications is reasonably pled because at no time before his move was he informed that he should delay his relocation, indicating to him that the Flex Work request was "merely a formality." (Opp'n Br. at 4–9.)

To state a claim for promissory estoppel, a plaintiff must plead the following elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it[;] (3) reasonable reliance; and (4) definite and substantial detriment." *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty of Burlington*, 194 N.J. 223, 253 (N.J. 2008)). Here, the Court's analysis starts and ends with reasonableness of reliance. In its prior Opinion, the Court dismissed Soltis's promissory estoppel

5

claim because it found that the timeline of events as described in the complaint—namely, that Soltis moved to South Carolina in August 2022 after submitting his Flex Work request two months prior without having yet heard back about the request—precluded reasonable reliance. (Op. at 7–8.) Specifically, the Court stated that "the [c]omplaint does not articulate his basis for relying on his communications with Schmidt despite having pursued a formal Flex Work application." (*Id.* at 8.)

The Amended Complaint contains allegations that Schmidt failed to tell Soltis prior to him contracting to sell his New Jersey home that he had to submit anything in writing in order to relocate, and that Soltis thought the Flex Work request process was a "mere formality" because he had worked remotely prior to that point without any such requirement. (Am. Compl. ¶¶ 16, 18.) However, the Court again finds that the timeline of events as pled precludes Soltis's reasonable reliance on Schmidt's communications from October 2021 and March 2022. Mirroring the allegations in Soltis's first complaint in substance, the Amended Complaint states that Soltis sold his house in May 2022, applied for remote work approval through Catalent's formal Flex Work process in June 2022, and then relocated to South Carolina in August 2022 after submitting the request. (Am. Compl. ¶¶ 18–19; Opp'n Br. at 8.) The Court rejects Soltis's theory that these facts establish an adequate foundation to plead reasonable reliance; as Defendants point out, it is not reasonable for Soltis, after being told by Schmidt that he needed to submit a Flex Work request, to somehow infer that he did not actually need such approval before moving, especially in light of the fact that when he was permitted to work remotely without issue, it was during and because of the COVID-19 pandemic. (*Id.* ¶ 11; Reply Br. at 2.)

6

Even if the Amended Complaint's allegations could somehow be construed as sufficiently stating reasonable reliance by Soltis on Schmidt's pre-move communications,[8] the Court further finds that it still must dismiss Count I because it fails to adequately allege that there was a clear and definite promise, another essential element of the claim. Regarding the pre-move communications that Schmidt did not foresee an issue with Soltis' relocation, Defendants argue that such communications were not firm promises, as they were informal and occurred before Soltis submitted the Flex Work request. (*Id.* at 10–11.) As a result, they could at best be construed as indefinite expectations of future acts. (*Id.*) Regarding the post-move communication about commuting to New Jersey three days per week, Defendants argue that it was a directive, not a promise, because Soltis had to do it to maintain his employment. (*Id.* at 12.)

On the other hand, Soltis insists that Schmidt promised that there would be no problem with him working remotely, even if he relocated out of state.[9] (Opp'n Br. at 10.) He argues that Schmidt's promise was "heightened" because she never advised Soltis to seek approval for remote work before he had contracted to sell his New Jersey home. (Opp'n Br. at 10.) Soltis adds that the only "condition" to his employment as he understood it was that he visit Catalent sites, which he had been doing for years, and that Schmidt never told him even after he submitted the Flex Work request that there was a possibility it would not be granted. (*Id.* at 10–11.) Lastly, Soltis cites to *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 704 A.2d 1321, 1324–25 (N.J. App. Div. 1998), to argue that courts no longer strictly adhere to the clear and definite promise requirement for promissory estoppel. (Opp'n Br. at 3.)

---

[8] To the extent Soltis's promissory estoppel claim is based not on Schmidt's pre-move communications but on her post-move communication that Soltis could continue working so long as he traveled to New Jersey three days per week, the Court finds that it must dismiss the claim because there are no allegations detailing what actions Soltis took, if any, in reliance on that communication, after he had already relocated to South Carolina. (*See generally* Am. Compl.)

[9] Soltis emphasizes that he is not alleging a "promise of continued employment," nor is he obligated to. (Opp'n Br. at 10.)

7

Here, Schmidt's pre-move communications were subject to change at any point in the future—and did in fact change as soon as she informed Soltis about the Flex Work approval process and advised him to apply. Such indefinite promises concerning future conduct are too vague to constitute a clear and definite promise. *See Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002)) (indefinite promises or promises subject to change by promisor do not constitute clear and definite promises) (applying New Jersey common law); *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (vague promises to "do something" or "take care of" something are not clear and definite) (citing *Del Sontro*, 223 F. Supp. 2d at 574). Moreover, Soltis's reliance on *Pop's Cones* is misguided. The court in *Pop's Cones* did not relax the standard for showing a 'clear and definite promise,' but rather rejected a heightened standard of proof that a prior decision, *Malaker*, had applied. *Pop's Cones, Inc.*, 704 A.2d at 1324–25 (citing *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 395 A.2d 222 (N.J. App. Div. 1978) and deeming its heightened proof requirement inequitable). Regarding the post-move arrangement for Soltis to work in New Jersey three days per week, Soltis did not give any consideration for that promise, and so it was merely a directive rather than a bilateral promise, as Defendants point out. (Opp'n Br. at 12.)

In sum, the Court will dismiss Count I without prejudice because Plaintiff inadequately pleads two of the required elements of promissory estoppel: reasonable reliance and clear and definite promise.[10]

### 2. Breach of the Covenant of Good Faith and Fair Dealing (Count IV)

Count IV of the Complaint alleges a claim for breach of the covenant of good faith and fair dealing. (Am. Compl. ¶¶ 43–46.) "There is no universally-accepted test for establishing a breach

---

[10] Because the Court finds that the first and third elements of promissory estoppel are not adequately pled, the Court need not address the remaining two elements of the claim.

8

of the duty of good faith and fair dealing, but two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins. Co.*, Civ. No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005)).

Defendants argue that Count IV should be dismissed for several reasons, most notably because the Amended Complaint, like Soltis's original complaint, fails to plead facts demonstrating that Defendants acted in bad faith or with a malicious motive. (Moving Br. at 16.) Soltis insists that the Amended Complaint shows that Defendants lacked good faith and fair dealing by terminating his employment "when they very well knew of the representations and promises made to him, upon which they knew he relied." (Opp'n Br. at 14.) In addition, Soltis argues that Defendants acted in bad faith because they postponed processing his Flex Work application, rejected it, and then demanded that he work three days per week at Catalent's New Jersey location despite knowing that he had already moved. (Opp'n Br. at 8.)

The Court first notes that the Amended Complaint is bereft of allegations that Catalent postponed the processing of Soltis's Flex Work application and subsequently rejected it. (*See generally* Am. Compl.) While the Court will not speculate how allegations of intentional delay by Catalent, if present in the Amended Complaint, would have affected its current Rule 12(b)(6) analysis of Plaintiff's claim for breach of good faith, such allegations would at least point the Court to some possibly deceptive conduct on the part of Catalent. But, as pled here, the Amended Complaint contains no factual allegations—beyond Plaintiff's own conclusory speculations—to support an inference of bad faith or malicious conduct by Catalent. (*See generally id.*); *Sharifi v. Twp. of East Windsor*, Civ. No. 21-18097, 2023 WL 2182003, at *7 (D.N.J. Feb. 23, 2023)

9

("Plaintiff cannot survive a motion to dismiss based on broad, conclusory allegations, unsupported by specific facts."). Just as in the original complaint, the Court finds that the Amended Complaint does not plead any facts to suggest that Schmidt deliberately withheld information from Soltis about the company's remote work policies, or that the company maliciously terminated Soltis from his employment.[11] (*See generally id.*)

The Court will therefore dismiss Count IV without prejudice.

## V.  CONCLUSION

For the reasons outlined above, Defendants' Motion to Dismiss will be GRANTED. Plaintiff will be given leave to file an amended complaint, limited to addressing the deficiencies identified herein, within 30 days. Failure to cure the deficiencies identified herein may result in a dismissal with prejudice. An appropriate Order will follow.

Date: **August 6, 2024**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

---

[11] Moreover, as the Court held in its prior Opinion, merely giving Plaintiff a pretextual reason for his termination does not rise to the level of bad faith or maliciously motivated conduct by Catalent.

10